IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CARLENE MIGHTY, Independent Administrator of THE ESTATE OF SHIRLEY N. EDWARDS, Deceased and CARLENE MIGHTY, Individually,<br><br>Plaintiffs,<br><br>v.<br><br>SAFEGUARD PROPERTIES MANAGEMENT, LLC,<br><br>Defendant. | Case No. 16 C 10815<br><br>Judge Joan H. Lefkow |

## OPINION AND ORDER

Carlene Mighty, individually (Mighty), and in her capacity as independent administrator of the estate of Shirley N. Edwards (Estate), deceased, brought suit against Safeguard Properties Management, LLC (Safeguard), a Delaware corporation, asserting claims for trespass to real property (count I), conversion of personal property (count II), consumer fraud (count III), and fraud (count IV). (Dkt. 15.) Safeguard has moved to dismiss counts III and IV under Federal Rule of Civil Procedure 12(b)(6). (Dkt. 18.) For the reasons stated below, the motion is granted in part and denied in part.[1]

---

[1] The court has jurisdiction under 28 U.S.C. § 1332, and venue is proper under 28 U.S.C. § 1391(b).

# BACKGROUND[2]

Shirley Edwards owned real estate located at 58 Clover Leaf Rd. in Matteson, Illinois. (Dkt. 15 ¶ 5.) Edwards owned the property from 1990 until her death on March 19, 2013, whereupon the Estate became legal titleholder. (*Id.* ¶¶ 6–8.) From 1990 until October 2013, Mighty, Edwards's heir, resided at the property with Edwards's permission. (*Id.* ¶ 9.)

On or about March 24, 2005, Edwards executed a refinanced mortgage and security agreement for the property with Beneficial Illinois, Inc., d/b/a Beneficial Mortgage Co. of Illinois (Beneficial). (*Id.* ¶ 11.) Beneficial no longer exists. (*Id.*) The mortgage and security agreement were subject to a mortgage life insurance policy that, in the event Edwards died before the term of the mortgage expired, provided full payment to Beneficial for any outstanding debt on the mortgage. (*Id.* ¶ 12.) Edwards paid her monthly mortgage and life insurance premiums up to and including March 2013. (*Id.* ¶ 13.) Mighty informed Beneficial upon Edwards' death of her passing and of the life insurance policy. (*Id.* ¶ 14.) Beneficial took no steps to obtain the insurance benefit or cancel the mortgage. (*Id.* ¶ 15.)

On notice of Edwards' death, Beneficial retained Safeguard to manage the Property and protect Beneficial's interest in it. (*Id.* ¶ 16.) Safeguard, beginning on or about October 1, 2013, by notice attached to the door of the property, by notices mailed to Mighty at the property, and by numerous phone calls, made several representations to Mighty. (*Id.* ¶ 52.) Specifically, Safeguard represented that (1) the property was vacant, (2) it had the right to change the locks on the property, (3) it had the right to deny access to Mighty, (4) it had the right to enter the

---

[2] Unless otherwise noted, the following facts are taken from Mighty's second amended complaint (dkt. 15) and are presumed true for the purpose of resolving the pending motion. *Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011) (citation omitted).

property, (5) it had the right to remove Mighty's personal property, and (6) Mighty had no rights in the property. (*Id.*)

On or about October 7, 2013, employees of Safeguard entered the property, rummaged through Mighty's personal property, stole numerous items including televisions, computers, and furniture, and changed the locks. (*Id.* ¶ 19.) Mighty maintains that on that date there were obvious signs and indications that the property was not abandoned, including recently improved portions of the property, connected utilities, food in the refrigerator, and other evidence of recent and current human occupancy. (*Id.* ¶ 25.) The same day, Safeguard again informed Mighty that she was not entitled to reside at the property and that the property had been deemed vacant, authorizing Safeguard to occupy the property. (*Id.* ¶ 20.) Mighty notified Safeguard that it had no rights to enter onto and into the property and demanded that Safeguard return to the property, remove its locks, return her personal property, and allow her entrance. (*Id.* ¶ 27.) Safeguard refused Mighty's requests. (*Id.* ¶ 28.)

As a result of Safeguard's actions, Mighty was forced out of her home, became homeless for approximately two years, lost her personal property, and suffered severe emotional distress. (*Id.* ¶ 29, 59.)

In 2013, before this lawsuit was filed, the Illinois Attorney General brought an action against Safeguard.[3] (*Id.* ¶ 46.) The Attorney General alleged eleven unfair or deceptive acts by Safeguard, relying on more than 200 complaints from Illinois consumers related to Safeguard that complained of the same acts that Mighty alleges in this case. (*Id.* ¶ 46–47.)

---

[3] The Attorney General's complaint is attached as an exhibit to the amended complaint. (Dkt. 15-2.)

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges a complaint for failure to state a claim on which relief may be granted. In ruling on such a motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Active Disposal*, 635 F.3d at 886 (citation omitted). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also establish that the requested relief is plausible on its face. *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The allegations in the complaint must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. At the same time, the plaintiff need not plead legal theories; it is the facts that count. *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010); *see also Johnson* v. *City of Shelby*, 574 U.S. ----, 135 S. Ct. 346, 346, 190 L. Ed. 2d 309 (2014) (per curiam) ("Federal pleading rules call for 'a short and plain statement of the claim showing the pleader is entitled to relief'; they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." (citations omitted)).

**ANALYSIS**

**I.  Consumer Fraud (Count III)**

To state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA), 815 Ill. Comp. Stat. 505/1, *et seq.*, a plaintiff must allege five elements: "(1) a deceptive act or unfair practice occurred, (2) the defendant intended for the plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual damages, and (5) such damages were proximately caused by the defendant's deception." *Dubey* v. *Pub. Storage, Inc.*, 918 N.E.2d 265, 277, 395 Ill. App. 3d 342,

335 Ill. Dec. 181 (2009) (citing *White* v. *DaimlerChrysler Corp.*, 856 N.E.2d 542, 546, 368 Ill. App. 3d 278, 305 Ill. Dec. 737 (2006)). Safeguard argues plaintiffs' claims for violation of the ICFA should be dismissed because (1) the Estate is not a proper plaintiff; and (2) plaintiffs are not consumers under the ICFA.

### A. The Estate is not a proper plaintiff

Safeguard makes two arguments regarding why the Estate cannot bring a claim under the ICFA. First, Safeguard contends that any claims under the ICFA for property damage or fraud must have existed at the time of Edwards's death for the Estate to have a cause of action. Second, Safeguard argues that the Estate is not a "person" as defined by the ICFA and, therefore, is not covered by the statute. Safeguard's second argument is dispositive; therefore it will not address the first.

The ICFA defines the term "person" to include "any natural person or his legal representative." 815 Ill. Comp. Stat. 505/1(c). The administrator of an estate is a legal representative under Illinois law. *See, e.g.*, *Murphy* v. *Peterson*, 473 N.E.2d 480, 483, 129 Ill. App. 3d 952, 85 Ill. Dec. 112 (Ill. App. 1984) (noting "the general rule that the term 'legal representatives' must be understood in its ordinary meaning, namely, administrators or executors"); *Gruenewald* v. *Neu*, 74 N.E. 101, 104, 215 Ill. 132 (1905) ("Undoubtedly the primary and ordinary meaning of the term 'legal representatives' is executors and administrators."). But to be considered a "person" under the ICFA an administrator must also be the legal representative of a "natural person." An estate, however, is not a natural person. *See Wisemantle* v. *Hull Enterprises, Inc.*, 432 N.E.2d 613, 616, 103 Ill. App. 3d 878, 59 Ill. Dec. 827 (Ill. App. 1981) (citing *Estate of W.H. Godair* v. *Case*, 220 Ill. App. 348, 349 (Ill. App. 1920)). As such, the Estate is not a proper plaintiff under the ICFA.

### B. Mighty is a consumer under the ICFA

Next, Safeguard argues that Mighty is not a "consumer" under the ICFA because she did not contract to purchase goods or services from Safeguard.[4]

Under the ICFA, a consumer is any person "who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 Ill. Comp. Stat. § 505/1(e). Mighty does not claim to have purchased or contracted to purchase goods or services from Safeguard. Instead, she relies on *People ex rel Daley* v. *Datacom Systems Corp.*, 585 N.E.2d 51, 146 Ill. 2d 1, 165 Ill. Dec. 655 (1992), to assert that she need not be a direct purchaser to seek redress under the ICFA.[5] Rather, she argues it is sufficient that Safeguard performed the fraudulent acts on behalf of Beneficial, whom the Estate was in contract with through the mortgage agreement. *Daley*, however, is distinguishable because the plaintiff there was the State's Attorney, who "is not limited regarding whose interests she or he may seek to protect." *Id.* at 65. Here, Mighty is a private citizen, rendering her more analogous to the plaintiffs in *Norton* v. *City of Chicago*, 642 N.E.2d 839, 841, 267 Ill. App. 3d 507, 204 Ill. Dec. 938 (Ill. App. 1994), where the court held that private citizens lacked standing to bring a claim under the ICFA against the City of Chicago and a private collection company because they were not consumers but, rather, parking violators. Thus, Mighty is not within the traditional understanding of ICFA consumers.

As an alternative, Mighty seeks recovery under the "consumer nexus test," which permits an ICFA claim where a plaintiff "alleges conduct [that] involves trade practices addressed to the

---

[4] Safeguard also argues that the administrator of an estate is not a legal representative and therefore not a "person" under the ICFA definitions. Illinois case law is to the contrary.

[5] Plaintiffs additionally attempt to analogize to *Daley* by claiming that it controls whenever the defendant has direct contact with the plaintiff. This argument does not appear in the *Daley* court's reasoning; thus it is unpersuasive.

market generally or otherwise implicates consumer protection concerns." *Thrasher-Lyon* v. *Illinois Farmers Ins. Co.*, 861 F. Supp. 2d 898, 912 (N.D. Ill. 2012) (alteration in original) (quoting *Bank One Milwaukee* v. *Sanchez*, 783 N.E.2d 217, 221, 336 Ill. App. 3d 319, 270 Ill. Dec. 642 (Ill. App. 2d Dist. 2003) (internal quotation marks omitted).

To establish an implication of consumer protection concerns, the plaintiff must show (1) that its actions were akin to a consumer's actions to establish a link between it and consumers; (2) that defendant's representations concerned consumers other than the plaintiffs; (3) that defendant's particular action involved consumer protection concerns; and (4) how the requested relief would serve the interest of the consumers. *Id.* at 912. Safeguard challenges the second element.[6]

Safeguard argues that Mighty's reliance on the complaint from the Illinois Attorney General's case, which alleges more than 200 accusations against Safeguard from people in Illinois, is insufficient because the complaints are only allegations, not proven facts.[7] This argument is unavailing because Mighty is entitled to an opportunity to prove allegations that, if taken as true, establish her claim. *Lexmark Int'l, Inc.* v. *Static Control Components, Inc.*, 134 S. Ct. 1377, 1391 n.6, 188 L. Ed 2d 392 (2014). Of course, Mighty will eventually have to

---

[6] Safeguard also asserts that plaintiffs fail to meet the first element because Safeguard typically contracts with lending institutions and lenders, and therefore plaintiffs are not akin to its normal consumers. As the court in *Bank One Milwaukee* pointed out, however, it would be anomalous for businesses to have standing to vindicate concerns under the consumer nexus test that natural persons do not. 783 N.E.2d at 221.

[7] Safeguard additionally argues that the Illinois Attorney General's complaint did not address the market generally or the general public and therefore fails the consumer nexus test. This argument ignores that the consumer nexus test requires the allegedly deceptive trade practices be *either* "addressed to the market generally *or* otherwise implicate[ ] consumer protection concerns." *Thrasher-Lyon*, 861 F.Supp.2d at 912 (quoting *Bank One Milwaukee*, 783 N.E.2d at 221). Thus, so long as consumer protection concerns are implicated by the Attorney General's complaint, the consumer nexus test may be satisfied without allegations that Safeguard's trade practices were addressed to the market generally.

7

prove that other consumers were affected by Safeguard's conduct. "If discovery is necessary to establish a claim, then it is not unreasonable to file a complaint so as to obtain the right to conduct that discovery. 'Rule 11 must not bar the courthouse door to people who have some support for a complaint but need discovery to prove their case.'" *Kraemer* v. *Grant County*, 892 F.2d 686, 690 (7th Cir. 1990) (quoting *Frantz* v. *United States Powerlifting Federation,* 836 F.2d 1063, 1068 (7th Cir. 1987)). Safeguard's alleged actions in notifying Illinois residents that their homes were vacant and abandoned when they were not, and then changing the locks on some of those homes without authorization, concern consumers other than plaintiffs. At this early stage, Mighty's allegations therefore give rise to a plausible claim for relief under the consumer nexus test.

Accordingly, Safeguard's motion to dismiss count III is granted as to the Estate and denied as to Mighty.

## II. Common Law Fraud (Count IV)

To assert a claim of fraud, a party must allege "(1) a false statement of material fact, (2) knowledge or belief of the falsity by the party making it, (3) intention to induce the other party to act, (4) action by the other party in reliance on the truth of the statements, and (5) damage to the other party resulting from such reliance." *Bd. of Educ. of City of Chi.* v. *A, C and S, Inc.*, 546 N.E.2d 580, 591, 131 Ill. 2d 428, 137 Ill. Dec. 635 (1989). Plaintiffs averring fraud must state "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Safeguard argues plaintiffs' claims for fraud should be dismissed because (1) the claims did not exist at the time of Edwards's death but arose before Mighty was appointed as the representative of the Estate; and (2) plaintiffs did not sufficiently allege that reliance was reasonable and action was taken as a result of such reliance.

### A. The Estate is a not a proper plaintiff

Safeguard appears to rely on the Illinois Survival Act, 755 Ill. Comp. Stat. 5/27-6, to assert that the Estate has no cause of action because the alleged acts took place in October of 2013, approximately seven months after Edwards passed away. The Survival Act was created to "compensate the estate of the decedent for the damages and injuries he suffered prior to death," *Williams* v. *Manchester*, 864 N.E.2d 963, 994, 372 Ill. App. 3d 211, 309 Ill. Dec. 722 (Ill. App. 2007) (quoting *Nat'l Bank of Bloomington* v. *Norfolk & W. Ry. Co.*, 383 N.E.2d 919, 928, 73 Ill. 2d 160, 23 Ill. Dec. 48, (1978)) (internal quotation marks omitted), *rev'd on other grounds by Williams* v. *Manchester*, 888 N.E.2d 1, 228 Ill. 2d 404, 320 Ill. Dec. 784 (2008). The actions of Safeguard occurred after Edwards's death. Although, presumably, the administrator could bring a claim on behalf of the estate had Safeguard damaged property of the estate, Mighty has not alleged damage to property of the estate. As such, the Estate is not a proper plaintiff.

### B. Mighty sufficiently alleged reasonable reliance and action in reliance

Safeguard alleges that the complaint contains mere legal conclusions that plaintiffs "relied on" Safeguard's statements and "their reliance was reasonable." (Dkt. 18-1 at 9.) "The question of whether a plaintiff's reliance was reasonable should generally be decided by the trier of fact."[8] *Doe* v. *Dilling*, 861 N.E.2d 1052, 1070, 371 Ill. App. 3d 151, 308 Ill. Dec. 487 (2006). Thus, the court will only consider whether the complaint alleged facts that, if true, give rise to a claim that plaintiffs reasonably relied on Safeguard's statements and actions.

Mighty was lawfully residing at the property when Safeguard allegedly committed the fraudulent acts. As indicated in plaintiffs' response, Mighty had little choice but to rely on the fact that she was locked out of her home. Additionally, Mighty alleges she was unsophisticated

---

[8] The *Dilling* court went on to state that the court could decide the reasonableness of the reliance if it is apparent that only one conclusion can be drawn. For the reasons listed above, that is not the case here.

in business and legal matters, and that Safeguard's numerous notices and phone calls were made under an aura of authority. "In determining whether a party justifiably relies on another's representations, all of the circumstances surrounding the transactions, including the parties' relative knowledge of the facts available, opportunity to investigate the facts and prior business experience, will be taken into consideration." *Luciani* v. *Bestor*, 436 N.E.2d 251, 256, 106 Ill. App. 3d 878, 62 Ill. Dec. 501 (Ill. App. 1982). Thus, the parties' respective knowledge and sophistication, coupled with their knowledge of the facts, give rise to a reasonable inference that Mighty relied on Safeguard's statements and that reliance was not unreasonable.

Next, Safeguard argues that plaintiffs fail to allege how they changed their position based on the fraudulent statements. The complaint alleges that Mighty believed Safeguard's notice and changed her position when she acquiesced in Safeguard's false representations, and did not (could not) re-enter the property, resulting in her becoming homeless.

Because the amended complaint contains sufficient allegations to give rise to a reasonable inference that Mighty acted in reasonable reliance on Safeguard's misrepresentations, Safeguard's motion to dismiss count IV is denied.

## CONCLUSION AND ORDER

For the reasons stated above, defendant's motion to dismiss (dkt. 18) counts III and IV is granted as to the Estate and denied as to Mighty. The case is scheduled to be called for a status hearing on November 29, 2017 at 9:30am, at which time the parties shall be prepared to report on possible settlement of the case.

Date: September 7, 2017

_____
U.S. District Judge Joan H. Lefkow